


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Zachary A. Myers  
Assistant United States Attorney  
Zachary.Myers@usdoj.gov

Suite 400  
36 S. Charles Street  
Baltimore, MD 21201-3119

DIRECT: 410-209-4848  
MAIN: 410-209-4800  
FAX: 410-962-0716

October 30, 2018

Elizabeth Genevieve Oyer, Esq.  
Shari Silver Derrow, Esq.  
Assistant Federal Public Defenders  
Office of the Federal Public Defender (D. Md.)  
100 S. Charles Street, Tower II, 9th Floor  
Baltimore, MD 21201

Re:   United States v. Chukwuemeka Ekwonna, Criminal No. CCB-17-433

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Chukwuemeka Ekwonna (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Wednesday, November 7, 2018**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.   The Defendant agrees to plead guilty to Counts Six and Seven of the Indictment which charge him with Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591(a) and (b)(2). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland,

   a.   The Defendant knowingly enticed, harbored, transported, obtained, maintained, patronized, and solicited a person, namely Girl 1 and Girl 2;

   b.   The Defendant knew, or was in reckless disregard of the fact that Girl 1 and Girl 2 had not yet attained the age of 18 years, or the Defendant had a reasonable opportunity to observe Girl 1 and Girl 2;

   c.   Girl 1 and Girl 2 had not attained the age of 18 years;

d.  The Defendant knew that Girl 1 and Girl 2 would be caused to engage in a commercial sex act; and

e.  The Defendant's act of enticing, harboring, transporting, obtaining, maintaining, patronizing, and soliciting was in or affecting interstate commerce.

## Penalties

3.  The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Counts | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| Six & Seven | 18 U.S.C. § 1591(a) and (b)(2) | 10 years | Life | 5 years (mandatory) up to Life | $250,000 | ~~$5,100~~ *CCB* |

*$10,200 total*

a.  **Prison:** If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.  **Supervised Release:** If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.  **Restitution:** The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 1593.

d.  **Payment:** If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.  **Forfeiture:** The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.  **Collection of Debts:** If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to

complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

    g. **Sex Offender Registration:** As a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

    h. **Additional Special Assessment:** The Defendant must also pay an additional special assessment of $5,000 per count, unless the Defendant is indigent, pursuant to 18 U.S.C. § 3014.

Waiver of Rights

  4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein and to the following United States Sentencing Guidelines ("U.S.S.G."):

    a. **Base Offense Level:** The applicable base offense level is **30**, pursuant to § 2G1.3(a)(2), because the Defendant will be convicted under 18 U.S.C. § 1591(b)(2).

        b.     **Use of a Computer:** Pursuant to § 2G1.3(b)(3)(B), there is a **2-level increase** because the offense involved the use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minors.

        c.     **Sex Act:** Pursuant to § 2G1.3(b)(4)(A), there is a **2-level increase** because the offense involved the commission of a sex act or sexual contact.

        d.     **Abuse of Public Trust:** The Defendant understands that the government will argue that there should be a **2-level increase**, pursuant to § 3B1.3, because the Defendant abused a position of public trust in a manner that significantly facilitated the commission and concealment of the offense. The Defendant remains free to argue that this adjustment should not be applied.

        e.     **Grouping Adjustment:** Pursuant to §§ 3D1.2 and 3D1.4, Counts Six and Seven, and the relevant conduct set forth in each constitute a separate Group of equal seriousness, and combine for two Units, resulting in a **2-level increase**.

        f.     **Repeat and Dangerous Sex Offender Against Minors:** The Defendant understands that the government will argue that there should be a **5-level increase**, pursuant to § 4B1.5(b)(1), because the Defendant engaged in a pattern of activity involving prohibited sexual conduct. The Defendant remains free to argue that this adjustment should not be applied.

        g.     **Acceptance of Responsibility:** This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office intends to make a motion pursuant to § 3E1.1(b) for an **additional 1-level decrease**, assuming your client continues to accept personal responsibility for your client's conduct up to, and through, sentencing. This Office may oppose any adjustment for acceptance of responsibility under § 3E1.1(a) and may decline to make a motion pursuant to § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        h.     **Final Adjusted Offense Level:** Thus, the Defendant's final, adjusted offense level will be **40, 38, 35, or 33**, after application of the anticipated adjustment for acceptance of responsibility, depending on the Court's rulings on the applicability of § 3B1.3 and § 4B1.5(b)(1).

       7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c) (1) (C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **no greater than 20 years (240 months)** of imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

10. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the

Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

   a. A Samsung Galaxy S5 mobile phone, IMEI: 990006961577698;

   b. A Samsung Galaxy S7 mobile phone, DEC: 08965635104331796;

   c. A Samsung Tablet;

   d. ~~A Dell Inspiron laptop computer;~~

   e. ~~An HP desktop computer;~~

   f. A black Honda Accord, MD plate # 5AT3748, VIN 1HGCP2F60CA120705; and,

   g. A Glock 17 handgun, S/N MP4441D1, loaded magazine, and ammunition.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of

the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

19. The Court is not a party to this Agreement. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court is free to accept or reject the parties' joint sentencing recommendation pursuant to Rule 11(c)(1)(C). If the Court rejects the parties' recommendation, and the Defendant elects not to withdraw his plea of guilty, the Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the parties' recommendation, and

what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Zachary A. Myers
Ray D. McKenzie
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1/24/19
Date

Chukwuemeka Ekwonna

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

1/24/19
Date

Elizabeth Genevieve Oyer, Esq.
Shari Silver Derrow, Esq.

## ATTACHMENT A - STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, born July 1989, was a resident of Glenn Dale, Prince George's County, Maryland. Beginning January 24, 2016, the Defendant worked as a police officer with the Metropolitan Police Department (MPD), in Washington, District of Columbia. MPD provided the Defendant a Glock 17 handgun for use in connection with his duties as a police officer.

At times relevant to the Indictment, "Girl 1" and "Girl 2," approximately age 14 and 15 respectively, resided in Maryland and were students in the ninth grade.

### Ekwonna's Tagged Account

Tagged is a social media platform that allows members to create profiles, post status updates, upload photos, and send and receive messages. Tagged provides a mobile version of the platform that allows users to search for others based on location and engage in real-time chat.

On or about June 7, 2010, the Defendant created the Tagged account "E-man aka wateva u want me 2 be." The profile for this account listed the user's name as "Emeka Ekwonna," his address as "Glen Dale, MD," and his birthdate as the Defendant's true month and date of birth, but reflected that he was born in 1992.

Between on or about June 9, 2010, and on or about April 6, 2017, the Defendant uploaded several pictures to his Tagged account. These pictures included several pictures of his face, body, and car. On or about September 16, 2016, the Defendant uploaded a picture of himself sitting in the driver's seat in a police car wearing an MPD police uniform bearing the name "C. Ekwonna."

Between on or about June 1, 2011, and on or about April 6, 2017, the Defendant exchanged approximately 53,000 messages with thousands of other Tagged users. The Defendant used his Tagged account to send messages to many other users offering to pay them to engage in specific sex acts with him and to negotiate over the prices he would pay for sex.

### Ekwonna Engages in Commercial Sex with Girl 1 and Girl 2

Between December 19, 2016, and on or about April 5, 2017, the Defendant exchanged approximately 200 text and Tagged messages with Girl 1. In the messages, on several occasions the Defendant offered to pay Girl 1 to engage in sex acts with him. The Defendant discussed the sex acts they would engage in and where they would meet.

The Defendant met with Girl 1 and paid her for sex on several occasions in his car, or in motel rooms in and around Annapolis, Maryland, including on October 18, 2016; December 19, 2016; January 11, 2017; January 26, 2017; and February 15, 2017. The Defendant typically paid Girl 1 $30-$40 to engage in sex acts with him. On January 24, 2017, the Defendant asked Girl 1 to engage in sexual intercourse with him for $30. Girl 1 responded, "if youre a police officer where al your money going to [sic]." The Defendant responded that he could not pay her more because he had to pay rent and his car note.

On or about January 9, 2017, the Defendant exchanged approximately 54 Tagged messages with Girl 2. In the messages, the Defendant offered to pay Girl 2 to engage in sex acts with him. The Defendant discussed the sex acts they would engage in, and where they would meet. The Defendant drove his black Honda to Girl 2's location in Annapolis, Maryland. The Defendant paid Girl 2 $80 and engaged in sex acts with her in the back of his car.

Ekwonna had a reasonable opportunity to observe Girl 1 and Girl 2.

SO STIPULATED:

_____
Zachary A. Myers
Ray D. McKenzie
Assistant United States Attorneys

_____
Chukwuemeka Ekwonna
Defendant

_____
Elizabeth Genevieve Oyer, Esq.
Shari Silver Derrow, Esq.
Counsel for Defendant